UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 19-CR-10145-NMG |
| | ) | |
| ROBERT ROSCOE | ) | |

DEFENDANT'S SENTENCING MEMORANDUM

Mr. Roscoe stands before the court having pled guilty to a one count indictment charging Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1). Mr. Roscoe asks that the Court impose a sentence of 18 months with 2 years of Supervised Release to follow.

The factors found in § 3553(a) support the Defendant's sentencing recommendation as sufficient, but not greater than, necessary. [1]

I.    Nature and Circumstances of this Offense

The charged offense is the result of a traffic stop. Robert was the backseat passenger in a vehicle of friends. There is no allegation that any of the occupants in the vehicle were engaged in any wrongdoing prior to the arrival of the police. The crime in question is Robert's choice to keep a firearm on his person, despite a felony conviction which prevents him from possessing such a weapon.

---

[1] This sentence is consistent with the factors set forth in 18 U.S.C. § 3553(a) and will result in a sentence that is sufficient, but not greater than necessary, to effectuate the purposes of sentencing. *United States v. Kimbrough*, 128 S.Ct. 558 (2007); *United States v. Booker*, 125 S.Ct. 738 (2005); *United States v. Martin*, 520 F.3d 87 (1st Cir. 2008); *United States v. Rodriguez*, 527 F.3d 221 (1st Cir. 2008).

While the statement of offense conduct is correct, that there had been a call of suspicious activity in the area, that call was made several hours earlier and involved a different vehicle, a silver Mercedes-Benz, not the vehicle the driven by Mr. Maximo.

It is the uncharged conduct – specifically the way Robert reacts when confronted by police – that is also troubling. However, we ask the Court to consider Robert's history with the police, his fear of future incarceration, and his history within his community, to help understand why he would overreact in the way that he did. He has been forthcoming with the Court and the probation department in explaining why he possessed a firearm on that date.

II.    History and Characteristics of the Defendant

Robert Roscoe would describe his childhood as very normal; his parents were loving and caring. While they were separated, they lived only a street apart from one another. He had no wants, he had everything he needed from his parents as a child. It was simply the location of his upbringing that led him down a path that resulted in him possessing a firearm. While his parents were attentive and caring, Robert has been using marijuana regularly since the age of 9. There is no doubt that this can take a toll on the development of the brain and a young man's decision making. Despite Robert's well-meaning parents who provided for him both financially and emotionally, it is obvious how his environment has shaped his relationships and his outlook on his life. He has seen many childhood friends die from gun violence. The police and gang activity were an omnipresent component in his life. In his presentence interview, he described that when he leaves the house every day he worries whether he will return home that night.

While this is in no way an excuse for carrying a firearm, it does explain his decision on that date. He worries about his safety because he does not want his daughter to grow up without a father. His mother's decision to move out of Boston and down to Attleboro was a huge shift for

their family. For Robert's younger siblings, this could likely spare them from exposure to many of the dangers that he faced. This new home offers Robert an opportunity to build a life outside of Boston. Robert has been evaluating how to manage his anxiety surrounding his pending sentencing and future return to the community. He has discovered that listening to classical music allows him to let go of the stressors in his life. When he is inside in a multi-person cell, he will turn on classical music when the chaos of the prison becomes too much.

Sadly, Robert has a short-sighted vision of his future. This is because of the violence he has seen and the medical problems he suffers from, which are outlined at ¶¶ 69-71 in the PSR. These medical issues cause Robert to present as much older than he actually is. Even though he is only 28, his goals are short term. He wants to be alive to see is daughter turn 30, to see her get married and be independent. He does not think about his life after this. He has lost too many people and struggles with too many health problems to imagine a future for himself where he lives into old age.

Over the years Robert has tried to find a way to connect with his community in a positive manner. He was a Roca participant, participating in social justice circles of peers who faced the same challenges that he did. He loved working with Roca, particularly with then Director Shannon McAuliffe. We provide for the Court a letter from Roca confirming his participation and describing the work of the organization. This is where Robert's future lies; finding a path to give back to his community by using his challenging experiences to help others.[2]

III.   Guideline Range

We would propose that the Court calculate Robert's guideline range in this case

---

[2] Materials from Roca, December 5, 2019.

differently from that proposed by the Probation Department because (1) we ask the Court to reject the scoring of what would now be a juvenile conviction and (2) we ask the Court to reject the scoring of a marijuana conviction. We propose that the guideline in this case should be 15-21 months.

    *a.  Juvenile Convictions.*

The conviction appearing at ¶ 35 in the PSR, occurred on December 6, 2008, when Robert was 17 years old. In 2013, Massachusetts changed the age at which young people were prosecuted as adults, increasing the age to 18. The United States Sentencing Commission has stated, citing recent developments in the Courts and in neuroscience research, that the Commission has defined youthful offenders as 25 years old or younger at the time of sentencing. The Commission included individuals up to age 25 because "there is a growing recognition that people may not gain full reasoning skills and abilities until they reach age 25 on average."[3] While the Commission is talking about defendant's charged in federal court who fall within this age bracket, a common sense analogy can be drawn from the way that a Defendant's criminal history is evaluated as well.

While ultimately not adopted, in 2017 the Commission considered an amendment to §4A1.2 that excluded all prior juvenile adjudications and eliminated the distinction based on length of sentence served. This amendment was supported by the defense community for a number of reasons, namely (1) young people are less culpable than adults; (2) juvenile adjudications are less reliable than adult convictions due to fewer procedural protections; (3) the length of a juvenile disposition is a poor proxy for the seriousness of a prior offense, and is not comparable to the length of a sentence imposed in an adult criminal conviction; and (4)

---

3 https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20170525_youthful-offenders.pdf, page 5.

excluding these adjudications may have an ameliorative effect on the disproportionate impact of the criminal history rules on racial minorities.[4]

In tandem with the Sentencing Commission's evaluation of youthful offenders as including young people up to age 25, many advocates of the youth caught up in the criminal courts are pushing for an even higher increase to the age of majority, citing the same data concerning the developing brain and the unique trauma that young people suffer from incarceration. Citizens for Juvenile Justice has proposed legislation to change the manner in which 'emerging adults' interact with the court system that would help young people achieve better outcomes and reduce recidivism.

When sentenced for the offense in ¶ 35, in January of 2009, Robert, still 17 years old, was sent to MCI Cedar Junction. "The conditions of confinement often exacerbate symptoms of mental disorder, including PTSD."[5] The traumatic events that Robert has experienced in his community; the death, the violence, are part and parcel of why we are before this Court now on these charges. "Reliance on incarceration does not meet the needs of youth offenders who have suffered trauma. Indeed, it exacerbates trauma and is counterproductive to longterm community safety goals."[6]

After *Roper v. Simmons*,[7] Courts have been open to rethinking how and to what extent the development of the juvenile brain should affect appropriate sentencing and punishment. Citing *Atkins*, the Supreme Court found that juveniles can be "categorically less culpable than

---

[4] https://www.fd.org/sites/default/files/criminal_defense_topics/essential_topics/sentencing_resources/defender_recommendations/defender-public-comment-2017-with-appendix.pdf

[5] Karen Abram, Office of Juvenile Justice and Delinquency Prevention, Dept. of Justice, *PTSD, Trauma, and Comorbid Psychiatric Disorders in Detained Youth*   9 (2013).

[6] Laura Abrams and Diane Terry, *"You Can Run but You Can't Hide": How Formerly Incarcerated Young Men Navigate Neighborhood Risks*, 47 CHILD. & YOUTH SERVICES REV. 61 (2014).

[7] 543 U.S. 551 (2005).

the average criminal."[8]  The American Psychological Association, in a 2008 report, found that …[p]articularly before the age of 15, adolescents appear to display psychosocial immaturity in at least four areas: poor resistance to peer influence, attitudes toward and perception of risk, future orientation, and impulse control."[9]  "The case for psychosocial immaturity during adolescence is also supported by evidence from developmental neuroscience indicating that the brain structures of adolescents are less well developed than previously thought."[10]

While Robert is 28 now, more than half (6, out of 10) of his criminal history points were earned before he turned 20.

> b. *Marijuana Conviction*

Mr. Roscoe was convicted of the offense described at ¶ 40 and received a ***26 day, deemed served sentence***,[11] for possession with intent to distribute 2 bags of marijuana that was found in his mother's home. It is likely that Robert would not be prosecuted for this same offense at all today.

Were the Court to adopt our application of the guidelines, the base offense level would be 14, reduced by 2 for acceptance, for a total of 12. If the Court did not score the offenses at ¶¶ 40 and 35, the criminal history category would be III. This would result in a range of 15-21 months.

Our recommendation considers the framework of the United States Sentencing Guidelines, is sufficient to promote respect for the law, and serve the purpose of punishment, rehabilitation, and deterrence, pursuant to 18 U.S.C. § 3553, while recognizing the circumstances in this case. 18 U.S.C. § 3553(a)(l) provides that "[t]he court shall impose a sentence sufficient,

---

8 *Roper v. Simmons*, quoting from *Atkins v. Virginia*, 536 U.S. 304 (2002).
9 Russell Skiba et al., American Psychol. Assoc. Task Force, *Are Zero Tolerance Policies Effective in the Schools? An Evidentiary Review and Recommendations* 7 (2006). Internal citations omitted. http://www.apa.org/pubs/info/reports/zero-tolerance-report.pdf.
10 *Id.*
11 Docket, 1707CR1351

but not greater than necessary, to comply with the [following] purposes[:] .... (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide a just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(1) provides that "[t]he court, in determining the particular sentence to be imposed, shall consider the nature and circumstances of the offense and the history and characteristics of the defendant." See also Rita v. United States, 127 S. Ct. 2456, 2473 (2007).

Furthermore, our alternative calculation of the guideline and suggestion that the Court consider a range of 15-21 months as more accurately capturing the seriousness of the offense and the likelihood of recidivism, can be viewed as a downward departure. The guideline range suggested by the Probation Department is merely a starting point, and one factor, of many, for the Court to consider in evaluating an appropriate sentence.

Conclusion

For these reasons, we ask this Court to sentence Robert Roscoe to 18 months, with supervised release to follow.

ROBERT ROSCOE
By his attorney

*/s/ Jessica P. Thrall*
Jessica P. Thrall #670412
Federal Defender Office
51 Sleeper Street, 5th Floor
Boston, MA 02210
617 – 223- 8061

<u>CERTIFICATE OF SERVICE</u>

I, Jessica P. Thrall, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on December 7, 2019.

*/s/ Jessica P. Thrall*
Jessica P. Thrall